THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT PARISH, Defendant-Appellant.

(No. 71-134;

Fifth District—July 12, 1972.

Paul Bradley, of Defender Project, of Mt. Vernon, (Richard J. Wilson, Senior Law Student, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Richard S. Simpson, State's Attorney, of Lawrenceville, (James B. Zagel and Melbourne A. Noel, Jr., Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the Circuit Court of Lawrence County defendant was convicted of robbery and aggravated battery and was sentenced to concurrent prison terms of five to fifteen years on the robbery count and five to ten years on the battery count. On appeal defendant contends, among other things, that he was deprived of a fair trial by reason of the unfair and prejudicial remarks of the prosecutor in final argument and the extended cross-examination of defendant and his brother relative to defendant's prior criminal conduct.

Briefly stated, defendant, with an accomplice, was accused of robbing and severely beating an oil station attendant in Lawrence County on the night of September 25, 1970. The attendant recognized defendant as one of his attackers and immediately announced that fact to a number of individuals in an adjacent tavern where he sought help. At the trial the attendant positively identified the defendant, stating that he had known him and his family for more than fifteen years. Approxi-

mately $2000 was obtained in the robbery and none of it was recovered. At the time of defendant's arrest on the day following the robbery, and at the trial, he denied any implication in the crime and offered some alibi evidence to the effect that he was elsewhere at the time. Defendant's brother supported his alibi, stating that he was with him the entire evening; that they first learned of the robbery when they stopped at a place for cigarettes and were told that the victim had accused defendant and that the police were looking for him. In answer to a question on direct examination this witness stated that defendant was scared and did not report to the police because he had a record and was afraid the police would not believe him. In defendant's direct examination he stated that he tried to avoid the police after he heard he had been accused because, "I've had a record. I have been picked up for stealing and a lot of people haven't forgotten that and it has been hard to live down. I was scared no one would believe me. That's why I ran. That's why I didn't go to the police".

On cross-examination of defendant's brother, who had testified first, the prosecutor asked how long defendant's record was, how many offenses he had committed and where they took place. The witness stated that he did not know how long the record was, that he knew of two offenses, but not where one of them took place. He admitted, however, that he did know there was a "criminal conviction of record of burglary" against his brother.

The cross-examination of defendant was much more extended. He was asked what his criminal record was, what it consisted of. First, he stated that 12 years previously he had been charged in Indiana with what he called breaking and entering; he had plead guilty, was sentenced to 2 to 5 years and was placed on one year's probation. The prosecutor then asked him specifically about an air-conditioner and he admitted that a year previously he and a friend, who had testified for him in the present case, had stolen an air conditioner and they had been fined $205 each and were given a year's probation. Following further searching questions it was brought out that in 1965 or 1966 defendant had been convicted of non-support of a daughter and had served 4 months and 27 days of a six months sentence.

During the course of the cross-examination a dispute developed between the attorneys as to whether breaking and entering constituted a felony in Indiana. The question was not resolved, but at the close of all the evidence the State offered an instruction on conviction of a felony which was refused because of defense counsel's objection and the trial court's hesitancy to give it where there was no proof of the felony in the record.

In a lengthy final argument the prosecutor stressed defendant's criminal record, labeling him a many-time loser, a criminal of proven record. He called attention to the fact that 12 years ago, at 19 years of age, defendant had been given a break on the theory that he was not incorrigible; that again in the non-support case he was not put away for the safety and welfare of society but was given another chance; and then, once again, society refused to consider him incorrigible and extended him probation on the air-conditioner matter. In conclusion he argued that defendant, in spite of his opportunities, had never reformed, that his conduct had never been exemplary, and that it was time for this jury to recognize this and not worry anymore about one individual but find him guilty and safeguard the right of every individual in his home, his property and his life.

■■ It has been repeatedly held in the courts of Illinois that proof of a prior conviction of an infamous crime can be offered to discredit the testimony of an accused, but only by an introduction of the prior conviction itself, and not by cross-examination or other testimony. The reason for the rule has been succinctly stated in *People v. Decker*, 310 Ill. 234, and later reiterated in *People v. Kosearas*, 408 Ill. 179, to the effect, "There is no question more damaging to a defendant with a jury that one which suggests that he is a criminal or has been charged with a criminal offense. Such damage is magnified two-fold when it is elicited from a defendant on cross-examination and he is compelled to testify against himself. While it is true that a jury might not have decided differently, if the improper evidence of this nature had been excluded, it might have done so, and the defendant is entitled to that chance." Likewise, final argument is improper and highly prejudicial where the jury is informed of crimes or acts of misconduct of an accused which are distinct and entirely unrelated to the one for which he is being tried. *People v. Donaldson*, 8 Ill.2d 510; *People v. Hopkins*, 124 Ill.App.2d 415.

The State concedes these rules but argues that they apply only to an attempt to impeach a defendant's credibility by attacking his character, whereas in this case the prosecutor's purpose was to impeach the truth of defendant's statements on direct examination. In effect, it is contended that when defendant testified that he did not report to the police because he had a record for stealing his motive was to create a false impression as to the seriousness or extent of his record, and in doing so, he opened the door for the State to impeach this testimony. In each of the three cases cited in support of this contention (*People v. Bey*, 42 Ill.2d 139; *People v. Nastasio*, 30 Ill.2d 51, and *People v. Sevastos*, 117 Ill.App.2d 104), the court specifically found that the defendant had intentionally misled the jury on direct by admitting only one previous

offense in an effort to create the impression that he had no other convictions. Under such circumstances it was held that the State had a right to conduct a limited cross-examination to impeach the false impression thus created.

■■ We find these cases have no bearing on the facts of the case before us and that the contention now made by the State is merely an ill-conceived attempt to justify a flagrant violation of the applicable rules. From the record as a whole it is obvious that in mentioning his prior conviction for stealing defendant had no other motive than to explain his reason for not reporting to the police, for even after an extended cross-examination nothing competent and admissible was revealed. Nonetheless, in a long series of questions defendant was asked to reveal the details of his 12 year old Indiana conviction, his sentence and the fact that he was released on probation. He was pressed to explain a misdemeanor involving the theft of an air-conditioner and to state that he had been fined $205 and again put on probation for one year. And then a number of questions were directed toward another Indiana case involving non-support of a daughter by his first wife, for which he received a sentence of six months but only had to serve 4 months and 27 days.

Any lingering doubt that the prosecutor's cross-examination was directed solely to discrediting the defendant as an individual in the eyes of the jury is completely dispelled by his final argument. Based in great measure on defendant's prior record and misconduct the prosecutor labeled him as an incorrigible, one who had refused to reform after society had given him three specific opportunities, one whose conduct has been anything but exemplary throughout his life, one who because of his history should finally but put away so that society might finally be protected.

■■ In our opinion there is no question that defendant was tried to a large extent on the basis of his record and not on the facts of the crime with which he was charged. Under such circumstances, and even though the tactics of the prosecutor may not have been properly or adequately challenged in the trial court, fundamental fairness requires that we reverse and remand so that he may obtain the fair and impartial trial to which he is entitled no matter how strong the evidence against him may appear. See *People v. Cage*, 34 Ill.2d 530; *People v. Panczko*, 20 Ill.2d 86; *People v. Donaldson*, 8 Ill.2d 510.

Accordingly, the judgment of the Circuit Court of Lawrence County is reversed and the case is remanded for a new trial.

Reversed and remanded.

G. MORAN, P. J., and EBERSPACHER, J., concur.