THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL MARINE *et al.,* Defendants-Appellants.

Fifth District   No. 76-179

Opinion filed April 27, 1977.

JONES, J., dissenting.

Michael J. Rosborough and Phillip A. Kramer, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and James R. Sanders, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants Daniel Marine and James Healy appeal from a judgment of the Circuit Court of Williamson County where they were found guilty of burglary after a jury trial.

They make the following contentions in this appeal: (1) That it was prejudicial error to admit the testimony of a fellow prisoner that defendant Marine admitted to a prior, unrelated burglary allegedly committed by both defendants, and to which neither defendant had by any other evidence been connected; (2) that the inculpatory statements of defendant Marine constituted inadmissible hearsay as to defendant Healy, thus depriving Healy of the right of confrontation; (3) that it was error to introduce evidence of an oral statement by defendant Marine where the State's answer to defendants' discovery motion indicated that no such statements existed, even though these statements were known by the Williamson County Detective Unit three months prior to trial; and (4) that the trial court committed reversible error in refusing to allow defendants' cross-examination relating to the credibility of one of the State's witnesses.

On October 5, 1975, at 12:45 a.m., a burglar alarm sounded at the S & S Corporation building in Marion, Illinois. Responding to the alarm, police found no one present, but observed an opening in the west side of the building. The opening had been made by unscrewing and lifting back a portion of corrugated steel and then making a hole through the wallboard made of sheet rock.

Minutes later police at the building received a radio call from an officer of the Energy Police Department requesting assistance. He was in pursuit of a pickup truck, first observed a mile north of the S & S Corporation building traveling away from the burglary. After a brief loss of contact, the truck was located abandoned in a ditch. A pair of black gloves, a crowbar and an ax were found in the pickup truck while a toboggan cap was found on the ground. Footprints were followed from the truck to a wooded area until they were lost near a railroad track which crossed the Johnston City-Herrin blacktop.

At approximately 9:30 a.m. on the same day, Patrolman Glenn Smith observed the defendants Marine and Healy sitting on the bank of the Johnson City-Herrin blacktop about a mile east of the railroad tracks. Officer Smith observed that defendants' clothing was wet and contained vegetation. Having earlier received information that a manhunt was in progress in the Marion area, Patrolman Smith radioed Detective Wiseman of the Williamson County Detective Unit. Upon Wiseman's arrival the defendants were taken into custody.

Laboratory tests run on the plasterboard removed from the S & S Corporation building revealed the presence of gypsum. Gypsum was also found in the clothing of the defendants. Photographs of foot prints found near the area of the ditched truck revealed characteristics similar to the defendants' boots. A hair fragment found at the truck was also found to have similar characteristics to defendant Healy's hair, but no positive identification could be made. Nor were any fingerprints resembling the defendants' identified.

At trial the defendants did not testify but called Raymond Healy, Jr., and Marcia Healy, defendant Healy's brother and sister-in-law. They testified that James Healy had been living with his father in rural Enfield, Illinois, for about two months prior to the time of the arrest. On October 4, 1975, James Healy and Daniel Marine had been working with James's father cleaning up his back yard and fixing his back porch. In order to repair the porch the defendants had to tear down a ceiling made of sheet rock. Sometime around 2:30 p.m., on October 4, 1975, James Healy asked his brother Raymond to take them to Cairo to pick up his paycheck from Inland Towboat Company, his employer. A few hours later Raymond dropped the defendant off on Highway 460 in order to hitchhike to Cairo. On cross-examination Marcia Healy stated that the toboggan cap found outside the abandoned truck was defendant Healy's, while Raymond Healy testified that he had never seen either of the defendants with a toboggan cap.

At the trial the State also produced the testimony of William Bauer, a prisoner who had been in contact with both defendants at the Williamson

County Jail on various occasions during the time defendants were awaiting trial. Bauer testified over defense counsel's objection to conversations with the defendants. Testimony at trial reveals that a cell change was about to take place at the county jail and that Marine apparently knew that Bauer would be transferred somewhere near Healy. Bauer testified that Marine told him to inform Healy not to talk to detectives and that he had nothing to worry about unless he had taken off his gloves during the burglary. Bauer further testified that shortly after the cell transfer he relayed Marine's message to Healy.

Over defense counsel's continuing objections, Bauer testified about a second conversation occurring on October 20, 1975. In that conversation defendant Marine indicated that he and Healy committed the burglary of the S & S Corporation by entering the side of the building; that they had taken several items from the establishment which they threw out of the truck while being chased; and that defendant Marine had worn rabbit fur-lined gloves during the burglary. In addition, Bauer testified that Marine remarked that he hoped the police were not investigating any other burglaries in which entry was gained in the same way as at the S & S Machinery building because he and Healy had committed a burglary of a bowling alley in Muddy, Illinois. No part of this conversation took place in Healy's presence, nor did he assent to any part of it.

Paul Beltz, deputy sheriff of Saline County, was called by the State and verified the occurrence of a burglary in Muddy, Illinois, on September 22, 1975. Deputy Beltz also testified that the bowling alley was housed in an aluminum building and entry was made through the back side by prying the siding loose and making a hole in the wall.

Defendant Healy contends that he was denied his constitutional right to confront the witnesses against him when the inculpatory statements of his co-defendant were introduced at trial. Defendant Healy's argument is based upon the United States Supreme Court ruling in *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). Healy additionally argues that such inculpatory statements were inadmissible hearsay. We agree.

■■ ■ In *Bruton* the Supreme Court held that in a joint trial the introduction of an out of court statement by one co-defendant which implicates a second co-defendant, violates the latter's right of confrontation, particularly when the co-defendant who made the statement cannot be subjected to cross-examination at trial. Although the right to cross-examination secured by the confrontation clause is applicable to the States under the fourteenth amendment (*Roberts v. Russell*, 392 U.S. 293, 20 L. Ed. 2d 1100, 88 S. Ct. 1921 (1968)), Illinois law holds that no violation of the *Bruton* rule occurs when the defendant

claiming the benefit of the rule has himself made a similar inculpatory admission which is admitted into evidence. *People v. Rosochacki*, 41 Ill. 2d 483, 244 N.E.2d 136.

In this case neither of the defendants testified at trial. Nevertheless the trial court admitted Bauer's testimony concerning the statements made by Marine on October 20. Although defendant Healy responded to a second statement made by Marine to Bauer, that response was not a similar incriminating statement so as to fall within the *Rosochacki* exception to the *Bruton* rule. See *People v. Delk*, 36 Ill. App. 3d 1027, 345 N.E.2d 197.

■■ Nor do we believe defendant Healy waived this issue for purposes of appeal as contended by the State. At trial defense counsel objected to Bauer's testimony as inadmissible hearsay and defendant raised a similar contention in his notice of appeal. Even if we were to find a waiver of this issue for purposes of appeal, we regard the right of confrontation to be of such substance as to invoke the application of the plain error rule. See *People v. Scott*, 100 Ill. App. 2d 473, 241 N.E.2d 579, and *People v. Hopkins*, 124 Ill. App. 2d 415, 259 N.E.2d 577.

■■ Error, even of a constitutional nature, may not require reversal. (*Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967); *People v. Smith*, 38 Ill. 2d 13, 230 N.E.2d 188.) However, we must be able to declare a belief that the error was harmless beyond a reasonable doubt. (*Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *People v. Smith*, 15 Ill. App. 3d 10, 304 N.E.2d 50.) The question we must ask is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. (*Fahy v. Connecticut*, 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229 (1963); *People v. Smith*, 15 Ill. App. 3d 10, 304 N.E.2d 50.) In spite of other evidence in the record, we are unable to say beyond a reasonable doubt that the admission of defendant Marine's inculpatory statements did not contribute to the finding of the defendant Healy's guilt. The defendants were not found at or near the site of the burglary. The only direct evidence linking defendant Healy with the burglary (save Marcia Healy's testimony of the toboggan cap which was contradicted by Raymond Healy) was the inculpatory statements of defendant Marine. Under these circumstances it is quite possible that Marine's statements played a large part in the finding of defendant Healy's guilt. (See *People v. Smith*, 38 Ill. 2d 13, 230 N.E.2d 188.) Because of this error the judgment against Healy must be reversed.

Because of our holding above, we consider the following issues solely as they relate to defendant Marine.

Defendant Marine contends that testimony relating to a prior burglary which he allegedly committed was prejudicial error. It is the general rule

that evidence of crime other than the one for which the accused is being tried is not admissible. However, exception is made for evidence which shows motive, intent, identity, absence of mistake, or *modus operandi* even though it may show the commission of a separate offense. (*People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Palmer*, 47 Ill. 2d 289, 265 N.E.2d 627, *cert. denied*, 402 U.S. 931, 28 L. Ed. 2d 866, 91 S. Ct. 1532.) "In fact, it has been broadly held that evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime." *People v. McDonald*, 6 Ill. 2d 448, 455. See also *People v. Dewey*, 42 Ill. 2d 148, 246 N.E.2d 232; *People v. Kovacivich*, 10 Ill. App. 3d 797, 295 N.E.2d 33.

■■ At trial Bauer testified to defendant Marine's admission that he and Healy burglarized a bowling alley in Muddy, Illinois, in which entry was gained in the same manner as at the S & S Machinery building. Additional evidence established that there had, in fact, been a burglary of the Muddy, Illinois, bowling alley and that unauthorized entrance had been gained by prying back the siding and making a hole in the wall. Entrance to the S & S Corporation building was gained in the same way. The opening in the building was made by unscrewing and lifting back a portion of corrugated steel and then making a hole through the wallboard. The trial court admitted this evidence, over objection, on the ground of design or *modus operandi* and indicated that such mode of entrance was the first of its kind known to the court. Furthermore, the trial court instructed the jury that such evidence of another crime was to be considered for the limited purpose of defendant's identification, presence, design and knowledge. Therefore, we agree with the trial court and hold that the evidence was relevant and admissible to establish defendant Marine's *modus operandi*.

■■■ Defendant Marine further contends that he was denied a fair trial because the State did not list the statement he allegedly made to Bauer on October 20 in its discovery answer. While we agree that there was a technical violation of Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412), we do not believe the error denied the defendant a fair trial. Failure to comply with the discovery requirements of Supreme Court Rule 412 does not mandate the exclusion of proffered evidence. (*People v. Carbona*, 27 Ill. App. 3d 988, 327 N.E.2d 546, *cert. denied*, 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) In the absence of surprise or prejudice, failure to list the statement in the pretrial discovery is not reversible error. *People v. Clinton*, 43 Ill. App. 3d 62, 356 N.E.2d 1119. See also *People v. Hunsaker*, 23 Ill. App. 3d 155, 318 N.E.2d 737; *People v. Jones*, 13 Ill. App. 3d 684, 301 N.E.2d 85.

The record reveals that defendant filed motions for continuance and severance on January 7, 1976. The motion for continuance was based on

new evidence furnished by the State on January 26-27, 1976. Among the evidence was the name of witness William Bauer and statements allegedly made by the defendant to Bauer. The record also reveals that the defendant's attorney spoke with Bauer on or before January 27, 1976. The court on defendant's motion continued the case to February 2, 1976.

In regard to the motion for severance, defense counsel alleged that certain admissions against defendant Marine would be prejudicial to and inadmissible against defendant Healy. Furthermore, in oral argument on the motion for severance, defense counsel made the following remarks:

> "Well, in the newly discovered evidence, the only evidence asserted by the State was that there were admissions against one defendant and not the other and, of course, later on I think, that matter has been corrected and another statement has been offered to the defendants and we now are * * * we are bound and there is evidence by both defendants in the same case so I will withdraw that motion and it is not valid at this time."

We believe the above facts clearly illustrate that defendant Marine was not surprised at trial by Bauer's testimony. We therefore find that the failure of the State to include the conversation in written discovery, although improper, was not such a violation of the discovery order as to deprive the defendant of his right to a fair trial. See *People v. Clinton,* 43 Ill. App. 3d 62, 356 N.E.2d 1119.

Finally, defendant Marine contends that the trial court committed reversible error in limiting cross-examination relating to the credibility of William Bauer. The record shows that on cross-examination Bauer stated that he did not tell defendant Marine or any other inmates that he was serving a seven-year sentence for kidnapping. Apparently defense counsel knew that Bauer had not been charged or arrested for such a crime. Defense counsel stated such testimony was not presented for the truth of its contents but rather to establish Bauer's propensity to lie. The court sustained the State's objection to the testimony and instructed the jury to disregard any questions and answers concerning kidnapping. The court ruled that the contested line of questioning and defense counsel's intent to call other alleged witnesses concerning Bauer's kidnapping statements created a collateral issue which was irrelevant and immaterial to defendants' statements about the burglary.

■■ The latitude permitted on cross-examination is within the discretion of the trial court and a reviewing court will not interfere unless this discretion has been abused. (*People v. Nicholls,* 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied,* 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578; *People v. Halteman,* 10 Ill. 2d 74, 139 N.E.2d 286.) While Bauer's credibility was important in this case, we do not believe that the trial court abused its discretion. In *People v. George,* 49 Ill. 2d 372, 274 N.E.2d

26, the defendant attempted to establish through cross-examination that the State's rebuttal witness had been investigated concerning burglaries occurring in the area. The trial court refused to allow such cross-examination and additionally refused to allow defendant to recall a policeman, who was a witness for the prosecution, to establish that there had in fact been such an investigation. In affirming the conviction, the Supreme Court of Illinois refused to extend the right of cross-examination to show that a witness had simply been under investigation for a crime. In so doing, the court emphasized the discretion of the trial court in such matters.

It must be noted that defense counsel in this case did not attempt to show interest, bias or motive in relation to a pending charge (*People v. Mason*, 28 Ill. 2d 396, 192 N.E.2d 835); rather, he sought to attack Bauer's credibility by establishing his propensity to lie. Since there was other evidence elicited at trial affecting Bauer's credibility, including his status as a prisoner and his convictions for armed robbery and escape, plus the court's instruction that Bauer's convictions should be considered as they reflected on his credibility, we perceive no error in the restricted cross-examination.

For the foregoing reasons we hold that the admission of defendant Marine's inculpatory statements against defendant Healy constituted reversible error. Accordingly, the judgment of the circuit court of Williamson County is reversed as to James Healy and remanded for a new trial. In addition, we find that defendant Daniel Marine received a fair trial, free from prejudicial error. His conviction is thus affirmed.

Reversed and remanded as to Healy; affirmed as to Marine.

EBERSPACHER, J., concurs.

Mr. JUSTICE JONES, dissenting:
I respectfully dissent.

While I must agree with the majority that there was a violation of the *Bruton* rule (*Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620) in this case as to defendant Healy, I do not agree that it contributed substantially to his conviction. Without consideration of the inculpatory statement of co-defendant Marine there was an abundance of evidence that the jury could, and in my judgment probably did, consider in determining defendant Healy to be guilty. The error in admitting the inculpatory statement I would therefore consider to be harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726; *People v. Smith*, 38 Ill. 2d 13, 230 N.E.2d 188.

After the police radio broadcast the information that the burglary had

occurred at the S & S Corporation a pickup truck was encountered and pursued. The pursuing officer was hampered by dust thrown up by the pickup truck and he lost sight of the truck during the chase. Later the truck was located beside the road in a ditch, abandoned. Footprints leading from the pickup truck indicated that its two occupants slid down an embankment and walked through a woods. The footprints led to a railroad track which runs in a north-south direction and crosses the Johnson City-Herrin blacktop upon which defendants were arrested at a point approximately one-half mile east of the railroad tracks. At the time of their arrest, which was at 9:30 the next morning, their clothes were muddy and contained weeds and cockleburs and defendant Healy had some vegetation in his hair. The muddy, wet, cocklebur-infested condition of Healy's clothes was consistent with flight through the woods from the abandoned truck. Defendant Healy's clothes were also found to contain gypsum, a substance encountered by the burglars as they forced an entrance into the S & S Corporation. Plaster casts of footprints taken near the truck had similar characteristics to the soles of defendant Healy's shoes. Hair found in the abandoned truck was similar in color and characteristics to defendant Healy's.

At the time of his arrest defendant Healy produced a California drivers license which identified him as Raymond Healy. He told the trooper he had been hitchhiking.

After his arrest defendant Healy told Officer Wiseman that he was on his way to Enfield, Illinois, from California, that he had spent the previous night in Cairo, Illinois. He also stated that his gear had been "ripped off" in Arizona.

Neither of the defendants testified at the trial but defendant Healy's story to the officers was contradicted by his own witnesses. His brother and sister-in-law testified that on the day of the burglary he had been removing sheet rock which contained gypsum from the roof of their father's house. Defendant Healy's brother testified that defendant Healy had left his duffle bag at his father's house. Accordingly, he could not have been hitchhiking from California on the day of the burglary and his gear had not been "ripped off" in Arizona and he could not have spent the previous night in Cairo. Defendant Healy's sister-in-law positively identified the toboggan cap found near the abandoned truck as belonging to defendant Healy.

I think the accumulated circumstantial evidence against defendant Healy is overwhelming and that the jury was correct in finding him guilty of the crime based upon that evidence. The jury was given the following instruction with regard to the inculpating statement made by co-defendant Marine to Bauer:

> "Evidence has been received that the defendants have been involved in a crime other than that charged in the indictment. This

evidence has been received solely on the issue of defendants' identification, presence, design, and knowledge. This evidence is to be considered by you only for the limited purpose for which it was received."

The jury was thus instructed to consider the statement only for the limited purpose described.

As the majority note in its opinion with regard to defendant Marine, the evidence of the burglary at Muddy, Illinois, was proper for showing a *modus operandi*. The prosecution did not dwell upon the inculpating statement nor did they unduly emphasize its importance to the jury. In fact, the prosecution did not mention the burglary at Muddy in its closing argument.

I would affirm the trial court's conviction of defendant Healy.